Cowles *v.* Cromwell.

———— • ◦ • ————

25b 413
158a 583

## COWLES, receiver, &c. *vs.* CROMWELL.

Where a person who has agreed to take stock in a banking association, subsequently, and before the same has been paid for, transfers the stock in good faith, and with the assent of the bank, to another person, the assignee is substituted in the place of the original stockholder, in regard to the liability to pay for the stock, and the latter is exonerated therefrom.

APPEAL by the defendant from a judgment entered at a special term. The action was brought by the plaintiff, as receiver of the Eighth Avenue Bank, to recover of the defendant the amount remaining unpaid upon his subscription to the capital stock of the bank. He was a subscriber for 340 shares, at $50 a share. Judgment was given in favor of the plaintiff, for $4914.61. The facts appear in the opinion of the court.

*Wm. Curtis Noyes*, for the appellant.

*Charles H. Hunt*, for the respondent.

*By the Court*, MITCHELL, P. J. The defendant was an original subscriber for 340 shares of the capital stock of the bank. He paid for 50 shares, but did not personally pay for any more. The other shares, with the consent of the bank, he transferred to other persons. 73 of these were transferred to Paulison, 60 of which were paid for. Paulison was considered a rich man, at the time of the transfer of the stock to him (June 12, 1854,) and his note was accepted by the bank in lieu of the defendant's for the 73 shares, and was afterwards renewed by the bank. The defendant also transferred to G. W. Stevens 33 shares, to G. R. Jaques 32, both in January, 1854, and to C. Sandford 31, to W. J. Howell 20, and to Paulison 101 shares, all in April, 1854. All of these shares, so transferred, were paid for by the transferrees, except 33 to Stevens, 32 to Jaques, 13 to Paulison, and 5 of those transferred to Sanford; making 83 in all, for which the court below gave judgment against the defendants, at $50 per share.

The defendant offered to show that the transfers made by him were made in pursuance of an agreement among the associates, entered into at the time of the subscription by him, that he was to be released on his substituting responsible and acceptable transferees in his place. This evidence was excluded. It was then admitted that Stevens, Jaques and Paulison had given notes to the bank for the amount of the shares transferred to them, respectively, and that those notes had been prosecuted to judgment by the receiver; as had also a similar note given

Cowles *v.* Cromwell.

by Mr. Potter; that proceedings were still pending in some or all of the suits; that he did not know the facts elicited on this trial when he commenced those suits; but he still intended to go on with them, until the money should be collected from some one, but that no part had yet been collected.

The judge, in his finding, states that he considers this a clear case of a violation of the statute relating to moneyed corporations, and of the articles of association. He does not find the facts on which his opinion is based, nor state whether he considers the transfers made in good faith. There is nothing in the evidence to show any bad faith on the part of the defendant in making the transfer, or on the part of the bank in accepting it. So that the question is, whether a person agreeing to take stock, who has transferred his stock, in good faith, with the consent of the bank, to a person who is liable to the bank, still remains liable for the stock transferred.

The bank could not sue in such a case. By its consent the stock, making a consideration for the defendant's promise, had passed from him to another person, who became directly a debtor to the bank. No other intention could be inferred, in such a case, than that the new debtor should be substituted for the original debtor. The evidence offered and rejected was material in this view of the intention of the bank, although not admissible as a complete bar, by itself. The articles of association declared that no shares should be transferable on which any call for an installment was unpaid. But this was merely for the protection of the bank, to prevent their being transferred without its consent; and not to prevent the bank from consenting to a substitution of one stockholder for another. A "transfer" is the act of the holder of the stock, alone; a "substitution" is the joint act of him and of the transferree and the bank.

The capital stock was not required to be paid in money, under the general banking law. The 19th section of that law (*Laws of* 1838, *ch.* 260) declares that every person becoming a stockholder by transfer shall succeed to all the rights and *liabilities* of the former shareholder. It thus substitutes the one for

the other; and makes the contract between the parties the contract with the bank, when it accepts the transferree.

The act of 1849, (*Laws of* 1849, *ch.* 226, *p.* 340,) to enforce the responsibility of stockholders in certain banking corporations and associations, and under which the plaintiff was appointed receiver, makes the stockholders responsible for the debts of the company, to the extent of their respective shares of stock, to be enforced in the manner prescribed in that act and in no other manner, (§ 1;) then section 3 declares that persons who were *stockholders* at the time of the contracting of a debt shall be responsible therefor, but shall be *exonerated* from such responsibility in respect to any stock which shall have been transferred previous to *any default* in the payment of such debt, on the books of the bank, to any resident of this state of full age, in good faith, and without any intent to evade such responsibility; and substitutes the liability of such assignee in the place of the original stockholder. These provisions seem to meet this case, and to exonerate the defendant.

The judgment for the plaintiff should be reversed and a new trial granted; the costs to abide the event.

[NEW YORK GENERAL TERM, September 14, 1857. *Mitchell, Roosevelt* and *Peabody*, Justices.]