MARTHA A. SINCLAIR, Appellant, v. HARRISON FULLER, Impleaded, etc., Respondent.

1. CORPORATIONS — DIRECTORS' LIABILITY. The personal liability of directors, under section 30 of the Stock Corporation Law (L. 1892, ch. 688), by reason of default in making the required annual report, is limited to debts contracted while the director continues in office, and does not include a debt incurred after he had ceased to be a director, although the default continues.

2. OFFICE OF DIRECTOR VACATED BY CEASING TO BE A STOCKHOLDER. The provision of section 20 of the Stock Corporation Law, that "if a director shall cease to be a stockholder his office shall become vacant," is self-executing.

3. STATUTORY PROVISIONS AT TO TRANSFER OF STOCK. The provisions of section 48 of the Stock Corporation Law, that "no stockholder of any such corporation shall make any transfer or assignment of his stock therein to any person in contemplation of its insolvency," and that "every transfer or assignment or other act done in violation of the foregoing provisions of this section shall be void," are aimed only at transfers made for the purpose of relieving the stockholder from his statutory or contractual

liability, and do not affect a *bona fide* sale of stock by one who is under no liability as stockholder to the corporation or its creditors at the time of the transfer.

  *Sinclair* v. *Dwight*, 9 App. Div. 297, affirmed.

  (Argued March 9, 1899; decided April 18, 1899.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered October 23, 1896, reversing a judgment in favor of plaintiff entered upon a decision of the court on trial at Circuit without a jury, and granting a new trial.

October 16, 1888, the Adams Furniture and Manufacturing Company, Limited, was incorporated under chapter 611 of the Laws of 1875 and the acts amendatory thereof and supplementary thereto for the purpose of manufacturing and selling furniture, having its office and principal place of business at the village of Adams, N. Y. It started with a capital stock of $20,000, divided into shares of $100 each. November 14, 1890, its stock was increased to $30,000, and April 19, 1892, to $40,000, divided into 400 shares of $100 each, at which sum it remained until the incorporation became insolvent, in February, 1895. The defendant was a stockholder, a director and the vice-president of the corporation from its organization until December 27, 1893, at which date he held 52½ shares under certificate No. 41 and 20 shares under certificate No. 53. December 27, 1893, he sold all his shares (72½) to John Sinclair, in consideration of one dollar, and assigned and delivered his certificates to the purchaser. September 19, 1894, John Sinclair surrendered the certificates so assigned to him to the corporation and received a new certificate for the shares. John Sinclair was a stockholder, a director, the secretary, the treasurer and the general manager of the corporation during its entire existence.

The plaintiff is the wife of John Sinclair, and December 21, 1894, she loaned to the corporation $5,530, for which she received its note, payable on demand, with interest, which was signed " Adams Furniture and Manufacturing Co., Lim., per John Sinclair, Sec'y and Treas." The note was not paid, and

March 27, 1895, she duly recovered a judgment thereon in the Supreme Court for $5,636.91, damages and costs, which was duly docketed in the office of the clerk of the county of Jefferson, in which county the corporation had its principal office, and on the same day an execution was issued to the sheriff of that county, who, March 28, 1895, returned it wholly unsatisfied. The directors of the corporation failed to make and file annual reports of its affairs in January of the years 1892, 1893, 1894 and 1895, as required by section 30 of chapter 688 of the Laws of 1892, and March 20, 1895, this action was begun against all the directors to recover the amount of the judgment because of their failure to make and file such reports. On the trial a judgment was recovered against all the directors for the amount claimed, from which the defendant Harrison Fuller alone appealed to the Appellate Division, where the judgment was reversed and a new trial granted; and from that decision the plaintiff has appealed to this court.

*John Lansing* for appellant. The defendant Harrison Fuller was, at the time of the contracting of the indebtedness on which this action is brought, one of the directors of the Adams Furniture and Manufacturing Company, Limited. (L. 1875, ch. 611; L. 1892, ch. 687, § 23; *Deming* v. *Puleston*, 3 J. & S. 309; *Reed* v. *Keese*, 60 N. Y. 616; *Beardsley* v. *Johnson*, 121 N. Y. 224; Morawetz on Priv. Corp. § 495.) The sale and transfer by Fuller of his stock in the company to Sinclair in December, 1893, having been made in contemplation of the insolvency of the company, was void, and Fuller still continued to be one of the directors of the corporation. (L. 1892, ch. 688, §§ 20, 48; L. 1890, ch. 564, § 48; *Nathan* v. *Whitlock*, 3 Edw. Ch. 215; *Veiller* v. *Brown*, 18 Hun, 571; *Johnson* v. *Laflin*, 5 Dill. 65; *Nat. Bank* v. *Case*, 99 U. S. 628; *Bowden* v. *Johnson*, 107 U. S. 251; *Kindberg* v. *Mudgett*, 24 Wkly. Dig. 229; *Philpott* v. *St. George Hospital*, 6 H. L. Cas. 338.) The prohibition contained in section 48 of chapter 688 of the Laws of 1892 against a transfer by a stockholder in contemplation of insolvency of the corporation applied to this case.

77

(*Smith* v. *People*, 47 N. Y. 330 ; L. 1892, ch. 688, §§ 23, 29, 40, 46 ; *Harris* v. *Thompson*, 15 Barb. 62 ; *Sibell* v. *Remsen*, 33 N. Y. 95.) The defendant Fuller, being a director of the company at the time when the annual report should have been made and filed, and continuing such director until the corporation went into the hands of a receiver, the said defendant Fuller is liable to the plaintiff for the debt contracted by the Adams Furniture and Manufacturing Company, Limited. (L. 1892, ch. 688, § 30 ; *Whitney* v. *Cammann*, 137 N. Y. 342 ; *Vincent* v. *Sands*, 1 J. & S. 511 ; *Deming* v. *Puleston*, 55 N. Y. 655 ; *Reed* v. *Keese*, 60 N. Y. 616 ; *Jones* v. *Barlow*, 62 N. Y. 202 ; *P. S. Co.* v. *Connell*, 86 Hun, 319.)

*E. C. Emerson* and *Henry Purcell* for respondent. The defendant Fuller had ceased to be a stockholder, and had, therefore, ceased to be a director before the indebtedness in question arose. (Morawetz on Corp. §§ 57, 166, 310, 858 ; Thompson on Stockholders, §§ 210, 211 ; 1 Lindley on Part. [4th ed.] 701 ; *Oakley* v. *Boorman*, 21 Wend. 588 ; *Johnson* v. *Titus*, 2 Hill, 606 ; *Fargis* v. *Walton*, 107 N. Y. 398 ; *Presbyterian Church* v. *Cooper*, 112 N. Y. 517 ; *Eno* v. *Crooke*, 10 N. Y. 60 ; *Belden* v. *Meeker*, 47 N. Y. 311 ; *O. P. R. R. Co.* v. *Forrest*, 128 N. Y. 83 ; *Bunn* v. *Winthrop*, 1 Johns. Ch. 329 ; *Allen* v. *Brown*, 51 Barb. 86 ; *Richardson* v. *Mead*, 27 Barb. 178.) There was no statutory prohibition against the transfer of the stock under the circumstances of the case. (L. 1892, ch. 688, § 48 ; *Sprague* v. *Birdsall*, 2 Cow. 419 ; *McManus* v. *Gavin*, 77 N. Y. 36 ; *Garrison* v. *Howe*, 17 N. Y. 458 ; *Wallace* v. *Walsh*, 125 N. Y. 26 ; *S. H. B. Co.* v. *E. H. B. Co.*, 90 N. Y. 607 ; *Holmes* v. *Carley*, 31 N. Y. 289 ; *Gay* v. *Seibold*, 97 N. Y. 472 ; *People* v. *U. Ins. Co.*, 15 Johns. 358 ; *Duryee* v. *Mayor, etc.*, 96 N. Y. 477 ; *People* v. *N. Y. & M. B. R. Co.*, 84 N. Y. 565.) The transfer of stock was not fraudulent as to plaintiff and Martha A. Sinclair as subsequent creditors. (L. 1892, ch. 688, § 29 ; *Case* v. *Phelps*, 39 N. Y. 164 ; *Shand* v. *Hanley*, 71 N. Y. 319 ; *Savage* v. *Murphy*, 34 N. Y. 508.) Aside

from the sale of his stock Fuller had ceased to act as a director before the claims in question arose, and was, therefore, not liable for the same. (*Cameron* v. *Seaman*, 69 N. Y. 396; *O. & C. Co.* v. *Croome*, 14 Hun, 164; *Blake* v. *Wheeler*, 18 Hun, 496; *Chandler* v. *Hoag*, 2 Hun, 613; *Vincent* v. *Sands*, 1 J. & S. 512; .L. 1892, ch. 688, § 20; *Van Amburgh* v. *Baker*, 81 N. Y. 46; *P. & R. C. & I. Co.* v. *Hotchkiss*, 82 N. Y. 471; *Sturges* v. *Vanderbilt*, 73 N. Y. 384.) Upon the facts as found by the trial court this defendant was not liable. (L. 1892, ch. 688, § 20; *C. N. Bank* v. *Colwell*, 132 N. Y. 250; *P. & R. C. & I. Co.* v. *Hotchkiss*, 82 N. Y. 471; *Craw* v. *Easterly*, 4 Lans. 513; *Blake* v. *Wheeler*, 18 Hun, 496.) Upon the merits, the judgment of the trial court was inequitable and unjust, and was properly reversed by the Appellate Division. (*Paulding* v. *C. S. Co.*, 94 N. Y. 334; *N. B. Bank* v. *Cleveland Co.*, 91 Hun, 449; *Marine Bank* v. *Clements*, 31 N. Y. 33; *Dutcher* v. *I. & T. Nat. Bank*, 59 N. Y. 5; *Shultz* v. *Hoagland*, 85 N. Y. 464; *Constant* v. *University of Rochester*, 133 N. Y. 640; *Morris* v. *Talcott*, 96 N. Y. 100; *Johnson* v. *Rapalyea*, 1 App. Div. 464.)

Parker, Ch. J. The question up for decision is, was the defendant on the 21st day of December, 1894, a director of the corporation to which the plaintiff on that day made the loan that she now seeks to recover? It is not pretended that there exists any liability against the stockholders of this insolvent corporation in favor of its creditors. The directors omitted to file reports for the years 1892, 1893, 1894 and 1895, as required by section thirty of the Stock Corporation Law, by reason whereof they became personally liable for all the debts of the corporation " then existing, and for all contracted before such report shall be made." This clause, which was taken from the twelfth section of the Manufacturing Act (Laws 1848, chap. 40), has received construction in this court, it being held that the liability for default in publishing the required annual report is limited to debts contracted while the director continues in office, and does not include a debt incur-

red after he ceases to be a director, although the default continues. (*Shaler and Hall Q. Co.* v. *Bliss et al.*, 27 N. Y. 297.) The defendant was a director in 1892 and 1893, and in those years failed to perform his duty by causing a report to be made and filed as required by the statute, but the debt of the corporation to the plaintiff was not contracted until December 21st, 1894, and if the defendant ceased to be a director before that time, the statute imposed no liability upon him as to its payment. The defendant was a director in the year 1893, and in the absence of the election of his successor by the stockholders of the corporation, there were two methods by which he could cease to be a director; *first*, by resigning the office, which he could at any time do, and, *second*, by an absolute sale of all of his stock. The twentieth section of the Stock Corporation Law provides : " If a director shall cease to be a stockholder, his office shall become vacant." Now this defendant did not resign, but on the 27th day of December, 1893, nearly a year before this plaintiff loaned her money to the corporation, he sold his shares to John Sinclair, the plaintiff's husband, in consideration of one dollar, and assigned and delivered the certificates to the purchaser. Sinclair took the certificates, but did not cause them to be transferred to him on the books of the corporation until September 19th, 1894, at which time he surrendered the certificates to the corporation and received a new certificate for the shares. The defendant, therefore, disposed of his stock about a year before the debt was contracted, and the transfer was duly made on the books of the corporation more than three months before the loan was made. The several statutes providing for the creation of corporations have usually contained a requirement, in effect, that a director shall have at his election and throughout his term of office a certain number of shares of stock, thereby manifesting the legislative policy of absolutely assuring the management of the affairs of such corporation by persons only who have a personal pecuniary interest in its success or failure.

Before this court in *C. N. Bank* v. *Colwell* (132 N. Y. 250)

came an action by a creditor against a former director of an insolvent corporation created under the Laws of 1875, chap. 611. The defendant denied that he was a director at the time of the contraction by the corporation of the debt that the plaintiff sought to recover of him. It was made to appear that he had, as matter of fact, parted with all beneficial interest in and control over every share of stock that had been issued to him prior to that time, and this court held that the requirement of section ten of that act, that the directors " at their election, and throughout their term of office, shall be stockholders in such corporation to at least five shares," executed itself and operated to divest the defendant of title to the office which he had ceased to be qualified to hold. It is obvious that the language employed in section twenty of the Stock Corporation Law is still more direct and positive than that of the act of 1875, which was before the court in *Colwell's* case. There the requirement was that directors should be stockholders to the extent of five shares, not only at their election but through their term of office, and the court held that whenever they ceased to be stockholders, as required by the statute, their office ceased, but under this statute the legislature declares that if a director ceases to be a stockholder his office shall become vacant. If then this defendant ceased to be a stockholder prior to the contracting of this debt, his office as a director became vacant, and he was not chargeable with indebtedness incurred by the corporation subsequent thereto.

But the appellant insists that the defendant did not cease to be a stockholder. It is not questioned that he did assign and transfer his stock to the treasurer of the corporation more than a year before this debt was contracted and more than two years before the failure of the corporation. Nor is it disputed that the purchaser took possession of the stock and surrendered the certificates to the corporation and obtained a new certificate to himself for the number of shares represented by the old certificate. But, it is said, this was done in contemplation of the insolvency of the corporation and for the pur-

pose of relieving the defendant from liability as a director, and, therefore, the attempted transfer of the stock was void, and there was, in legal effect, no transfer whatever. The statutory provision invoked in support of this contention is to be found in section forty-eight of the Stock Corporation Law and reads as follows : " No stockholder of any such corporation shall make any transfer or assignment of his stock therein to any person in contemplation of its insolvency. Every transfer or assignment or other act done in violation of the foregoing provisions of this section shall be void." The construction of this provision, for which the appellant contends, would render the transfer of stock as between the transferrer and a transferee void, although the transaction was free from fraud. It would render a certificate of stock so transferred void as against a corporation assenting to the transfer, no matter to what extent it may have gone in recognizing the rights and liabilities of the purchaser of the stock, and this we have lately held will not result, even where the shares are assessable. (*Rochester & Kettle Falls Land Co.* v. *Raymond*, 158 N. Y. 576.) This provision of the statute should be construed in the light of the rest of the section, which readily declares the purpose of the legislature. The section is entitled " Prohibited transfers to officers or stockholders." The first sentence prohibits any transfer of the property of the corporation to any of the officers, directors or stockholders for the payment of any debt, where such corporation has refused to pay any of its notes or other obligations. The second sentence prohibits any assignment of any of the property of the corporation to any officer, director or stockholder when insolvency is imminent, for the purpose of giving preferences. The sentence next following provides for an accounting by the intended beneficiary for any property which may have been received by him in violation of. the prohibitions contained in the first two sentences, and the fourth sentence is the one we have quoted, which prohibits any transfer or assignment of stock in contemplation of the insolvency of the corporation. Now the scheme of this section is to protect the creditor from the

misconduct of the officers, directors and stockholders of a corporation; to insure those who trust either to the solvency of the corporation, to the honor of its officers, or to the liability of stockholders, from being defrauded by the officers, the directors or stockholders of such corporation.   There are corporate situations in which the stockholders are liable, within certain limitations, for the debts of the corporation, and there have been instances in the past where stockholders, realizing that the insolvency of the corporation is imminent, and that they are likely to lose not only the amount already invested in the shares, but possibly much more besides, have secured for the shares an apparent purchaser, who, being himself in a state of insolvency, was willing, for a very trifling, temporary consideration, to add to his obligations.   Transfers of such a character, made for the purpose of relieving the shareholder from his statutory or contractual liability, are aimed at by this provision of the statute.

The appellant cites two authorities in this state which he claims so declare the state of the law upon this subject as to make the statute (if it be given no broader construction than we think belongs to it) wholly unnecessary, for it but restates the law as laid down by the courts.   Without conceding that, if his premises be accurate, his argument is justified, we note that one of the two cases cited does not show it to have been the law of this state prior to the adoption of the statute that makes every transfer of stock of a corporation whose insolvency is imminent void as against the creditors of the corporation having a right to resort to the stockholders for the collection of debts.   The authorities cited are *Nathan* v. *Whitlock* (3 Edwards, Chan. 215 ; affd., 9 Paige Chan. 152) and *Veiller* v. *Brown* (18 Hun, 571).   In the latter case the defendants had judgment at the Special Term, which was reversed at the General Term, not on the ground that a stockholder could not relieve himself from liability by a *bona fide* sale of his stock, but for the reason that the evidence disclosed that the sale was not *bona fide* in that a secret understanding or trust existed in favor of the transferrer.

This statute makes the law on that subject very different and along much broader lines. Had it been in existence at the time the cause of action arose in *Veiller's* case, it would have been unnecessary to introduce evidence tending to show that the sale was not *bona fide* and that there was a secret understanding by which the stockholder retained a beneficial interest in the stock. All that would have been required to be shown would be that the transfer was made in contemplation of its insolvency. If we are right in the position taken, that the object of the statute was to prevent solvent stockholders from escaping their statutory liabilities to creditors of corporations, as well as their contractual liability to corporations not assenting to the transfer, then there was nothing to prevent the defendant from making absolute disposition of his shares December 27th, 1893. It matters not that he may have been of the opinion that ultimately the corporation would fail and that the effect of the sale of his stock would be to relieve himself from liability as a director. It was his right, if he saw fit, to get rid of the office of director for the purpose of avoiding liability for debts thereafter to be contracted, and he could accomplish that result either by resigning or by an absolute sale and transfer of his stock. He took the latter course, and made what is conceded to be an absolute sale and transfer of his stock without any reservation whatever, and the statute so operated on this act that he ceased to be a director, and hence is not liable for this debt of the corporation, which was contracted a long time thereafter.

The judgment should be affirmed, and judgment absolute ordered for the defendant on the stipulation, with costs.

All concur, except VANN, J., not voting.

Judgment accordingly.