## STEELE v. MOORE.

PLEADING.— *Written Instrument.*— *Execution of.*— *Negligence in.*— *Preferred Creditor.*—A written instrument, creating a lien upon the personal property of a debtor and thus securing a debt owing from him to one of his creditors, is not invalidated by the fact that its execution was procured by such creditor with the intention of securing the payment of his own claim, and of preventing other creditors from levying execution upon such property to satisfy their claims; nor because such debtor executed it negligently, without any knowledge of its contents, upon the assurance of such creditor that it was all right.

SAME.— *Landlord and Tenant.*— *Written Lease.*— *Merger.*—Where, by the terms of his lease of a farm to his tenant, the landlord acquires a certain interest in a specified portion of a crop which is being raised on the leasehold by such tenant, such lease is not abrogated or annulled, by the subsequent execution, to such landlord, by such tenant, of a mortgage upon all of such growing crop to secure the payment of a debt.

SAME.— *Fraud.*—Where fraud is pleaded, the facts constituting it must be specifically alleged.

From the Hancock Circuit Court.

*W. R. Hough* and *W. March,* for appellant.

*G. H. Voss, E. A. Davis* and *J. A. Holman,* for appellee.

NIBLACK, J.—This was an action by the appellee against the appellant, to recover the possession of five hundred bushels of corn.

It was alleged in the complaint, that the plaintiff was the owner, and lawfully entitled to the possession, of five hundred bushels of corn, grown upon the farm on which David F. Davis then resided, which said corn was mortgaged and delivered to him by David F. Davis, of the value of two hundred and fifty dollars. That the same had not been taken for any tax, assessment, or fine, pursuant to any statute, nor seized under any execution or attachment against the property of the plaintiff, but was unlawfully detained, in the county of Hancock and state of Indiana, from the plaintiff, by the defendant. The complaint was sworn to in due form. No damages were demanded for the detention of the property.

The defendant answered in two paragraphs:

The first, in denial.

The second was, in substance, as follows, viz:

That the lands and farm mentioned in the complaint were the property of the defendant and the heirs of Thomas Steele; that said Thomas Steele and the defendant owned the land as partners; that the said Thomas Steele departed this life on the —— day of ———, 1866; that the defendant and one Harry Porter, on the 1st day of March, 1863, excuted a lease, whereby they leased to one David F. Davis the said farm mentioned in the complaint, of which lease the following is a copy, viz:

"An agreement entered into this 1st day of March, 1863, between John Steele and Harry Porter, as the first part, and D. F. Davis, as the second part, as follows: that the said Steele and Porter hath this day rented unto the said Davis their farm, on which Davis now lives, as follows: said Davis is to harvest all the wheat on said farm and thresh the same, in good order, and give Steele and Porter one-third in the bushel, at the machine. Said Davis is to give one-half of the corn raised on said farm, in the field, at gathering time. Said Davis shall cut the meadow farmed on said farm, and give Steele and Porter one-half. The clover field, the said Davis will pay four dollars per acre therefor, next Christmas. Said Davis is to have one-half of the fruit on said farm. Said Davis is to keep up the down rails and gates on the farm. In all cases where a new fence or resetting fences, said Davis to have pay therefor, at the custom of the country."

(Signed,)    "JOHN STEELE.

"WM. H. PORTER.

"D. F. DAVIS.

Attest:

 "R. E. BARRETT."

That before the taking of the corn mentioned in the complaint, and before the death of the said Thomas Steele, said Porter conveyed all of his interest in and to

said farm, by fee simple deed, to the defendant and said Thomas Steele. That said David F. Davis was still in possession of the said farm, leased as aforesaid. That in pursuance of said lease, the defendant entered upon said farm and gathered and hauled away the corn mentioned in the complaint, the same being one-half of the corn raised on said farm and the property of the defendant, as he had the right to do, wherefore, etc.

A demurrer was overruled to the second paragraph of the answer, but this ruling is not assigned as a cross error.

The plaintiff replied in four paragraphs.

The first was a denial.

A demurrer was overruled to the second and third paragraphs, and sustained to the fourth. Exceptions were reserved to these rulings, respectively, in proper form.

The second paragraph alleged that the plaintiff " ought not to be precluded" by the facts averred in the second paragraph of the answer, " because, he says, that the said supposed writing, mentioned " therein, "(so called a lease,) was obtained from the said David F. Davis by fraud, covin and deceit in this; that the said defendant, and others in interest with him, represented to said Davis that in order to secure said Steele and Porter in the payment of interest and principal of money that they had advanced to one Joseph Binford, to and for the use of said Davis, to give said Steele and Porter a lien on said Davis' growing crops, and prevent other creditors of said Davis from executing and seizing the same, and thereby preventing him from paying them as aforesaid, they, the said Steele and Porter, procured the writing of said supposed lease, and fraudulently procured the signature of the said Davis thereto, without reading the same to him and without his hearing read the same, or in any manner being made acquainted with its contents, and with the false assurance that it was all right, and for the purpose of cheating and defrauding the said Davis and his prior creditors, and this he is ready to verify."

The third paragraph alleged, in substance, that the lease set out in the second paragraph of the answer was superseded, abrogated and annulled by a mortgage, which was executed on the 5th day of May, 1863, by the said Davis to the said Steele and Porter, on all the wheat and corn which should be raised on the said farm during the year 1863; said corn to be attended, gathered and cribbed in proper season, to secure the payment of certain notes therein described.

There was a trial by a jury, and a finding for the plaintiff, assessing the value of the property detained at two hundred dollars, and his damages at twenty-five dollars.

The court overruled a motion for a new trial, and rendered final judgment on the verdict.

It is, amongst other things, assigned for error that the court below erred in refusing to sustain the demurrer to the second and third paragraphs of the reply, and in overruling the motion for a new trial.

The obligations which the said Davis assumed by his execution of the lease set out in the second paragraph of the answer, purport to be in consideration of the use and occupation by him of the farm referred to in said lease.

The second paragraph of the reply does not allege that these obligations, to be performed by said Davis, were more than a fair return for this use and occupation of the farm by him, and hence the lease is not attacked on account of any of the provisions which it contains. This paragraph does attempt to charge, however, so far as we are able to construe its language, that other and additional considerations entered into the execution of the lease.

One of the additional considerations, which is charged as having influenced Davis in executing the lease, is, in substance, that the appellant, with others in interest with him, represented to Davis that it was necessary for him to execute it, so as to secure the said Steele and Porter for money advanced by them for his use, and to give them a

lien on his growing crop, to prevent other creditors from levying execution or seizing upon it.

Suppose this all to be true; how does it invalidate the lease in any respect? It is not denied that Davis was indebted to Steele and Porter for money so advanced for his use. That the said Davis was so indebted, is the plain inference from the language employed in reference to the effort of the appellant, with others, to get a prior claim and lien on the growing crops. For aught that appears in this second paragraph of the reply, there was no impropriety in Davis' executing the lien, if he thought by doing so he could, incidentally, give Steele and Porter additional security for their debt.

It is also, in the same connection, charged that the said Steele and Porter procured the said Davis to sign the said lease, without reading the same or having it read to him or his being, in any other manner, made acquainted with its contents, with the false assurance that it was all right, for the purpose of cheating and defrauding the said Davis and his other creditors.

It is not alleged that the said Davis could not read, nor is any other excuse assigned for his apparent negligence in signing a paper he had not read, or in any other manner been made acquainted with the contents of. Davis could not exonerate himself from the obligations of this lease, by setting up this want of diligence in his own behalf. Much less, we think, can third parties be allowed to attack it on that account.

The charge that Davis executed the lease for the purpose of cheating and defrauding his other creditors is, in our opinion, too general and indefinite to make it available as an objection to the validity of this lease. It is not enough, in pleading, to characterize a transaction as fraudulent, by the simple use of that word; the pleader must allege such facts as show that conclusion. See *Curry* v. *Keyser*, 30 Ind. 214; *Joest* v. *Williams*, 42 Ind.

565. We, therefore, regard the second paragraph of the reply as clearly insufficient.

The third paragraph of the reply charged, that the lease set out in the second paragraph of the answer was superseded, abrogated and annulled by the mortgage referred to in said paragraph of the reply. That, we think, by no means follows upon the facts stated. An interest remained to Davis in the growing crops, under the lease, which he might mortgage without necessarily interfering with the lease.

When a defendant in an action like the one at bar pleads property in himself, alleging that he acquired it in a particular way, it is not a sufficient reply to charge that he did not so acquire it, but became the owner of or entitled to it in some other or different way. The issue tendered by the appellee, in this third paragraph of his reply, was an immaterial one in the cause, and whichever way decided, the result could not inure to his benefit.

The third paragraph of the reply is, in our opinion, also insufficient. We therefore hold that the demurrer to it, as well as to the second paragraph of the reply, ought to have been sustained.

There is another question arising in the record of this cause, which is one of some importance in practice, and that is, whether the jury can properly assess damages for the unlawful detention of personal property, or if any, whether more than nominal, where no damages are demanded in the complaint. The view, however, which we have taken on the points already passed upon in this cause, renders it unnecessary for us to decide that question, and hence we express no opinion upon it.

The judgment of the court below is reversed, and this cause is remanded for further proceedings in accordance with this opinion.