Stafford v. St. John.

---

## STAFFORD ET AL. *v.* ST. JOHN.

[No. 20,317.   Filed February 24, 1905.]

1. CORPORATIONS.—*Directors.*—*Liabilities.*—The liability of the directors of manufacturing and mining corporations founded upon the statute providing that such directors shall annually publish a financial statement of such corporation, or, failing, shall be liable to any person injured thereby, is for deceit, and the facts constituting the deceit must be shown.   p. 284.

2. PLEADING.—*Complaint.*—*Directors' Liability.*—A complaint against the directors of a manufacturing corporation for damages for loss by reason of such directors' failure to publish their annual financial report is not sufficient where it merely charges that such directors failed to publish such report and that plaintiff loaned the money and lost by reason of their failure to publish such statement, such averment being a mere conclusion.   p. 285.

3. SAME.—*Complaint.*—*Statutory Cause of Action.*—*Sufficiency.*—A complaint founded upon a statutory cause of action must contain all the facts necessary to bring it clearly within the provisions of such statute.   p. 285.

4. SAME.—*Alleging Insolvency.*—It is not sufficient to allege insolvency in general terms, but the facts must be shown, so that the court can conclude the fact of insolvency therefrom.   p. 286.

5. JUDGMENT.—*Res Judicata.*—*Law of the Case.*—Where a cause was appealed to the Appellate Court and reversed on an answer of the statute of limitations, such decision is not *res judicata* as to the sufficiency of the complaint, and is not the law of the case except as to the statute of limitations.   p. 287.

6. SAME.—*Res Judicata.*—*Law of the Case.*—Where a cause was reversed by the Appellate Court on an answer, and on a retrial the

complaint was amended, such decision is not the law of the case as to the amended complaint, especially where there is nothing to show what were the allegations in the original complaint.    p. 288.

7.  CORPORATIONS.—*Directors.—Liability.*—Under the statute (§5073 Burns 1901) a director who was not a stockholder in a manufacturing corporation at the time of the incurring of a debt is not liable for failure to publish an annual financial statement of such corporation.   p. 288.

8.  EVIDENCE.—*Secret Purpose.—What Plaintiff "Would Have Done."* —In an action against directors of a manufacturing corporation for damages for failure to publish an annual financial statement, it is incompetent for plaintiff to testify that if he had known of the financial condition of such corporation he would not have loaned money to such corporation.   p. 290.

From Delaware Circuit Court; *Chauncey L. Medsker,* Special Judge.

Action by Cyrus B. St. John against James E. Stafford and others. From a judgment for plaintiff, defendants appeal. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590.  *Reversed.*

*Engle, Caldwell & Parry, W. A. Thompson* and *W. H. Thompson,* for appellants.

*James N. Templer* and *Edward R. Templer,* for appellee.

JORDAN, J.—This action was prosecuted in the lower court by appellee against appellants, who constituted a majority of the directors of a corporation known as the Albany Furniture Company, to recover damages against them individually, under §5073 Burns 1901, §3865 R. S. 1881, for the failure of said corporation to make an annual report by and through its directory, as exacted by §5071 Burns 1901, §3863 R. S. 1881. These two sections form a part of the governing law pertaining to manufacturing and mining companies. §5051 *et seq.* Burns 1901, §3851 *et seq.* R. S. 1881. The issues as joined between the parties were tried by a jury, and a verdict returned in favor of appellee for $300.83. Along with this verdict, the jury returned answers to a number of interrogatories. Separate motions

for a new trial were denied, and judgment was rendered on the verdict of the jury.

Of the defendants, James E. Stafford, William L. Reed, George H. Strong and Albert Strong appeal from the judgment, and assign as errors the following: (1) Overruling their demurrer to the amended complaint; (2) sustaining appellee's demurrer to the second paragraph of their answer; (3) denying their motion for judgment on the interrogatories of the jury; (4) overruling their motion for a new trial.

The defendants Lewis R. St. John, Morgan A. Wilson and Willis S. Richey also appeal, and each severally and separately assigns that the court erred in denying their motion for judgment on the interrogatories of the jury. St. John and Morgan A. Wilson also assign that the court erred in overruling their demurrer to the amended complaint, and that the court erred in sustaining the demurrer of appellee to the second paragraph of their answer to said complaint. Appellant Richey further assigns that the court erred in overruling the joint demurrer of himself and Thomas J. Leavell to the amended complaint, and also in sustaining appellee's demurrer to the second paragraph of the joint answer of himself and said Leavell, and in sustaining appellee's demurrer to the fourth paragraph of their answer to the amended complaint.

The complaint substantially charges that on January 27, 1892, the Albany Furniture Company was organized under the laws of the State of Indiana for the purpose of manufacturing and selling household furniture. Its principal place of business was at the town of Albany, Delaware county, Indiana. Appellants and others whose names are alleged to be unknown to the plaintiff were duly elected directors by the stockholders of said company, and during the years of 1893, 1894 and 1895, by reason of successive elections, they continued to be and act as the directors of said incorporated company during the aforesaid years.

They were and continued to be during all of the said years. stockholders of said corporation. It is alleged that said company became and "was largely indebted to divers and sundry persons, and was practically insolvent on or about the 1st day of January, 1894." On October 29, of the latter year, the plaintiff had no knowledge of the real financial condition of said company, and, believing it was solvent and free of debts, he loaned to it on said date $200 for twelve months, and accepted its note, bearing interest at eight per cent. from date until paid, as evidence of said loan. This note was not paid at maturity, and it is alleged that plaintiff instituted a suit against the corporation, and secured a judgment for the amount of the note. It is disclosed that no part of the note or the judgment rendered thereon has been paid, and that the same is still due and unpaid. It is shown that the corporation did not make and publish a report for the year 1894, in compliance with the provisions of §5071, *supra*. The complaint fully disclosed that there was an entire failure on the part of the corporation or its directory to make and publish the required report within twenty days after the 1st day of January, 1894. After disclosing these facts, the complaint proceeds to charge that, "had such report been made, filed and published, according to and as required by law, such report would have shown said corporation to be practically insolvent during the years 1894 and 1895, and largely in debt, and had such report been made and published according to and as required by law, within twenty days from the 1st day of January, 1894, it would have shown such an account of indebtedness owing by said corporation as to have, and it would have prevented and deterred plaintiff from loaning, and he would not have loaned, said sum of $200, or any other sum of money to said corporation on the 29th day of October, 1894, or at any time during the year 1894, on twelve months' time, or at all, without exacting good security, and in such case plaintiff would not have extended

any credit to said corporation on October 29, 1894, or at any other time after the publication of the ·report in that year." It is further alleged that the plaintiff, believing said corporation to be ·solvent and not indebted, and not knowing its financial condition, and there being no report on file with the clerk of the circuit court of Delaware county showing its condition, or published in any newspaper of said county, and he being entirely ignorant of its true financial condition, "was deceived into believing that said company was not in debt, and that its financial condition was good, by the failure and neglect of the defendants—a majority of its directors—to make, file and publish the report aforesaid for the year 1894, and, being so deceived, plaintiff was induced to and did loan the corporation the money aforesaid without any security." It is further disclosed that when the note became due the company was insolvent, and has so remained.

Sections 5071, 5073, *supra,* read as follows: "5071. Every such company shall, annually, within twenty days from the 1st day of January, make a report, which such company shall cause to be published in some newspaper printed in the county, if any (otherwise, in this State, nearest thereto), which shall state the amount of capital, the amount of assessments made and actually paid in, and the amount of existing debts; which report shall be signed by the president and a majority of the directors, and shall be verified by the oaths of the president and such directors and secretary." "5073. If any certificate or report made or public notice given by the officers of any such company, as required by this act, shall be false in any material representation, or if they shall fail to give such notice or make such report, and any person or persons shall be misled or deceived by such false report or certificate or on account of such failure to make such report, and damaged thereby, then all the officers who shall sign the same, knowing it to be false, or fail to give the notice or make the reports as

aforesaid, shall be jointly and severally liable for all damages resulting from such failure on their part while they are stockholders in such company."

The act pertaining to manufacturing and mining companies was originally enacted by the legislature in 1852. See 1 G. & H., p. 425, 1 R. S. 1852, p. 358. Section thirteen of this act is embraced in §5071, *supra,* and has remained unchanged. Section fifteen as originally passed provided as follows: "If any certificate or report made, or public notice given, by the officers of any such company, as required by this act, shall be false in any material representation, or if they shall fail to give such notice, or make such report, all the officers who shall sign the same, knowing it to be false, or fail to give the notice, or make reports, as aforesaid, shall be jointly and severally liable for all debts of the company contracted while they are stockholders, or officers thereof." This section, as stated in *American, etc., Co.* v. *Ellis* (1901), 156 Ind. 212, was a copy of section twelve of the statute of New York pertaining to manufacturing, mining, etc., companies, passed by the legislature of that state in 1848. In enacting this act the legislature of this State apparently had in view §14 of article 11 of our Constitution, which provides that "dues from corporations, other than banking, shall be secured by such individual liability of the corporators, or other means, as may be prescribed by law."

In 1869 (Acts 1869, p. 89) section fifteen was amended, and a supplemental section was added, declaring the meaning of the term "annually" as employed in section thirteen. Section fifteen as amended is now embraced in and constitutes §5073, *supra.* By the amendment in question this section was so changed as to read, after the words "or if they shall fail to give such notice or make such report," as follows: "And if any person or persons shall be misled or deceived by such false report or certificate, or on account of such failure to make such report, and damaged thereby,

then all the officers who shall sign the same knowing it to be false, or fail to give the notice or make the reports as aforesaid, shall be jointly and severally liable for all damages resulting from such failure on their part while they are stockholders in such company."

Section fifteen, as it originally stood, was drastic and penal in its character. It provided, as shown, that for making and publishing a false report, or for failure to make and publish the report as required, the directors who signed the report knowing it to be false, or who failed to give notice or make the reports, should be jointly and severally liable for all the debts of the company contracted while they were stockholders or officers thereof. This liability was cast upon the directors without regard as to whether the person dealing with the corporation was misled or deceived by the false report, or by their failure to make and publish a report as provided by section thirteen of said act. *American, etc., Co.* v. *Ellis, supra.*

A corporation created under the act in controversy is required to be managed by not less than three nor more than eleven directors. Such directors must, as the act provides, be stockholders of the company, and after the first year they are to be elected annually by the stockholders thereof. Under §5071, *supra,* the company, acting through its president, and at least a majority of its directors, must annually, and within twenty days from the 1st day of January, make and publish a report, stating therein the amount of capital, the amount of assessments actually paid to the company, and the amount of debts existing against it. This provision contemplates that the corporation shall have twenty days after the 1st day of January of each year to make up or prepare a statement of its accounts, assets and indebtedness as the same existed on the 1st day of January immediately preceding, which statement is to be embodied in the verified report required by §5071, *supra.* This provision of the statute is a wise one, and was designed by the legislature to

protect all persons having occasion to deal with the corporation, as it is intended to advise such persons of the company's standing and condition on the 1st day of January of each year.

1. The action in *Niles* v. *Dodge* (1880), 70 Ind. 147, was based on §5073, *supra*, on account of the failure of the company to make the report exacted by §5071, *supra*. This court in that appeal held the manner in which the plaintiff was misled or deceived by the neglect of the company to make and publish the report must be clearly alleged in the complaint.

In the appeal of *American, etc., Co.* v. *Ellis, supra*, the sections of the statute in question were considered. Dowling, J., speaking for the court in that case, said: "The suit under the statute is for deceit; it calls for indemnity only, and not punishment. It is therefore a remedial statute. An action upon it is not an action to recover a 'penalty' given by statute, but a suit to recover damages for a fraud. The mere violation of the statute gives no right of action. The violation must produce injury, and the person aggrieved is entitled to compensation only to the extent of the damages sustained."

In the case of *Brown* v. *Clow* (1902), 158 Ind. 403, the question, among others, was presented on the special findings of fact as to whether there was a sufficient showing or finding that the creditors in that case were misled or deceived by reason of the failure of the corporation to make and publish the report exacted by §5071, *supra*. This court, in reviewing the question in that appeal, said: "While the court found that the appellees gave credit to the corporation, and that the annual reports were not published, it did not find any fact or facts from which the inference can be drawn that the failure to publish such reports caused the appellants to be misled and deceived. The fact of such failure to publish is not enough. The connection between such failure and the credit given by the appellees must be shown.

The mere failure to publish the report does not, as the statute now stands, create the liability. The creditor must have been thereby misled and deceived. The facts must be of such a character as to show how and why and in what manner the creditor was deceived and misled. As was said by this court in *American, etc., Co.* v. *Ellis* [1901], 156 Ind. 212, the action upon §§5071-5073 Burns 1901 is for deceit, and all the authorities and all the precedents require that the circumstances shall be disclosed so that the court can, as a conclusion of law, state that by the failure to publish the report the creditor was deceived, misled and damaged." Citing numerous authorities.

2. Keeping in view the construction placed on the statute in question by this court, as to what is essential to be shown in an action based thereon, in order to enable the court to determine whether the complainant has been misled or deceived by the default of the company in not making and publishing the required report, we proceed to determine the sufficiency of the complaint in the case at bar. Its sufficiency is challenged by appellants for the reason, among others, that it wholly fails to aver facts which disclose any connection between the failure or default in making the report and the credit given by appellee to the company. Counsel for appellee, however, contend that it is sufficient to allege in the complaint that the failure to make and publish the report caused appellee's damage, and in support of their contention cite *Clow* v. *Brown* (1898), 150 Ind. 185. This decision, however, does not sustain their insistence that it is sufficient merely to allege that the failure to make and publish the report caused the damage to the complaining creditor. Such an averment is a mere conclusion, and would be violative of the rule that, in pleading, facts, and not conclusions, must be stated. The contention is also wholly at variance with what was said by this court in *Brown* v. *Clow* (1902), 158 Ind. 403.

3. Inasmuch as the action herein is based on a statutory

provision, the plaintiff, under a well-affirmed rule, must, by the facts alleged in the complaint, bring his cause of action fully and clearly within the provisions of the statute. The complaint in question may be said to be open to the objection that it attempts to show by mere conclusions, rather than by material facts, that the plaintiff was misled and deceived by the failure of the company to make and publish the report in controversy, and was thereby damaged by making the loan to said company. It is alleged, as shown, that the company "became and was largely indebted to divers and sundry persons, and was practically insolvent on or about the 1st day of January, 1894." It is manifest that these averments are but conclusions. The facts, if any, in support thereof, are not given or stated by the pleader. After disclosing the failure of the company to make and publish the report, it is then charged that "had such report been made, filed and published, according to and as required by law, such report would have shown said corporation to be practically insolvent during the years 1894 and 1895, * * * and would have prevented and deterred plaintiff from loaning, and he would not have loaned, said sum of $200, or any other sum of money to the corporation on October 29, 1894," etc. In the absence of any facts to disclose the financial condition of the company on January 1, 1894, the averment, that had such report been made and published it would have shown that the corporation was largely indebted and practically insolvent, is merely a conclusion, surmise or conjecture on the part of the plaintiff; and likewise the charge that, had the report been made, he would have been prevented and deterred from making the loan in controversy.

4. As asserted by this court in *American, etc., Co.* v. *Ellis, supra,* and again affirmed in *Brown* v. *Clow, supra,* the facts shown must be of such a character as to disclose how, why, and in what manner, the complaining creditor was deceived or misled. The circumstances must be dis-

closed so that the court can determine or conclude, as a matter of law, that, by reason of the failure of the company. to make and publish the report, such creditor was deceived or misled to his damage. Had the plaintiff in the case at bar averred facts, and not conclusions, to show the financial condition of the company on January 1, 1894—that is to say, the amount of its capital, assessments made and paid, its existing indebtedness or liabilities, the value of its assets— then, under the circumstances, such showing might, as a matter of pleading, be taken and considered as its true financial condition on January 1, 1894. It might, therefore, be reasonably presumed that had the company · discharged the duty exacted of it by law, and made and published a report as prescribed, it would have disclosed its true condition on the aforesaid date, corresponding at least to the condition shown by the facts alleged in the complaint. In other words, if, from the facts averred in the complaint, it was made to appear that the company was insolvent or in failing circumstances on said date, then from such showing it could be said that no ordinarily prudent person, who might have been advised of its insolvent condition by the published report, would have loaned it money or extended to it credit. *Clow* v. *Brown, supra.* Under the circumstances, the court would have been enabled to conclude or determine, as a matter of law, that by reason of the company's failure to make and publish the report, the plaintiff, within the meaning of the statute, had been misled and deceived in giving or extending credit to the company. The complaint, however, falls far short of coming within the rule which we have herein asserted.

5. It is insisted by counsel for appellee that the sufficiency of the complaint herein was affirmed in a former appeal to the Appellate Court *(St. John* v. *Stafford* [1901], 26 Ind. App. 695), and the decision in that appeal, it is asserted, must be regarded as the law in this case. The only question, however, involved and decided in the former

appeal was the sufficiency of the answer setting up the two-year statute of limitation as a bar to the action. The court held this answer insufficient, for the reason that such period of limitation did not apply, and the judgment was reversed and the cause remanded to the lower court. Counsel for appellee admit that in that appeal no question as to the sufficiency of the complaint was discussed, but they advance the argument that if the court had not considered the complaint sufficient it would have disposed of the case by merely holding that a bad answer was good enough for a bad complaint. There certainly is no merit in this contention.

6. Upon another view of the question we are satisfied that this contention of appellee's is untenable. It appears that, after the case was remanded to the lower court in the former appeal, the plaintiff filed an amended complaint, which is the one now in controversy. There is nothing, however, to disclose that the material facts alleged in the amended complaint are substantially the same as are those contained in the original complaint, which was the one in the record in the appeal to the Appellate Court. We conclude, at least for the reasons stated, that the complaint is insufficient, and the demurrers of appellants thereto should have been sustained.

7. It appears from the facts alleged in the answers of appellants Morgan A. Wilson, Lewis R. St. John and Willis S. Richey, that they were not stockholders in the company at the time the loan in question was made to it by appellee. The jury, in their answers to the interrogatories, expressly find that these appellants were directors from January 1, 1894, until March 28, 1894, on which date they sold their stock to other parties, and thereafter ceased to be stockholders in the company. Counsel for these appellants contend that, by reason of the fact that they were not stockholders of the company at the time it contracted the debt by borrowing appellee's money, they are not liable in this action,

within the meaning of the statute. We fully concur in this contention.

Neither the letter nor spirit of the statute in controversy contemplates that directors who fail to make the required report shall be held individually liable for debts contracted by the company after they have in good faith ceased to be stockholders therein. It would manifestly be unjust that they, although in default in making and publishing the report, should continue to be liable, under the statute, for debts contracted by the company while they were no longer stockholders, and were therefore powerless to prevent the company from incurring indebtedness. The statute in this respect speaks for itself. It provides that all of the officers who fail to make the reports "shall be jointly and severally liable for all damages resulting from such failure on their part while they are stockholders in such company." The term "while," as employed in the statute, is the equivalent of and means during the time they are stockholders in the company. One, among others, of the essential elements in this case, leading up to appellee's damage or loss, was the fact that he gave credit to the company by loaning the money in question. This money, as shown, was loaned, and the debt thereby created, on the 29th day of October, 1894, some eight months after the particular appellants hereinbefore mentioned had ceased to be stockholders in the company. Certainly appellee could not consistently claim, under the circumstances, that in loaning the money he in any manner relied on the individual liability of persons who were not at that time stockholders of the corporation.

The courts of New York, in construing the statute of that state, have held that the liability of the directors or trustees for default in making and publishing the report as required is confined to debts contracted by the company while the defaulting directors or trustees continue in office, and does not include debts created after they have ceased to

be directors or trustees of the company. *Boughton* v. *Otis* (1860), 21 N. Y. 261; *Shaler, etc., Co.* v. *Bliss* (1863), 27 N. Y. 297; *Cameron* v. *Seaman* (1877), 69 N. Y. 396, 25 Am. Rep. 212; *Philadelphia, etc., R. Co.* v. *Hotchkiss* (1880), 82 N. Y. 471; *Sinclair* v. *Fuller* (1899), 158 N. Y. 607, 53 N. E. 510.

Of course, it must be understood that the rule applies only to officers of the company who were in default in making the report, and thereafter in good faith sold or disposed of their stock, and not to those who do so for the purpose or with the intent of escaping liability on account of their default. Under the circumstances, the burden was on appellee, in order to recover, to show in his complaint, and prove upon the trial, that the parties whom he sought to subject to liability in this action were not only in default in failing to make and publish the report in controversy, but that they continued to be stockholders in the company at the time the debt was contracted. Upon this feature of the case the complaint may be said to be substantially sufficient, for by its averments it discloses that all of the defendants continued to be stockholders in the company during the years 1894 and 1895. The special answers of the jury, however, show that the appellants heretofore mentioned ceased to be stockholders on the 28th day of March, 1894— long before the loan in question was made to the company. It follows, therefore, that these appellants are not liable in this action, and their motion for judgment in their favor should have been sustained.

8. On the trial of the cause, while appellee was testifying as a witness in his own behalf, the following question was propounded and answered by him, over the objections and exception of appellants: "Mr. St. John, you may state to the jury whether or not, if you had known on the 29th day, or had had notice on the 29th day, of October, 1894, that the amount of capital stock (amount of capital of the Albany Furniture Company) was $10,000; that the

amount of its assessments made and actually paid, or in
stock issued and paid for, was $8,000; and that the amount
of its indebtedness was $5,339.55—would you have loaned
it the $200 that you did loan it, and taken its note therefor
without security?"    A.  "No, sir; I would not."    The rul-
ing of the court in admitting this evidence is assigned as a
reason, among others, for a new trial.    Counsel for appel-
lants contend that their clients can not be said to be liable
because appellee now believes that he would have done
differently, had he had knowledge or information of the
facts stated in the question on the date of making the loan.
It is insisted that the question to be determined is what had
been done, and not what might have been done under differ-
ent circumstances.    By answering this question, appellee
was permitted, in effect, to testify to the undisclosed intent
or secret operations of his own mind.    This was not permis-
sible.    It was not for him to declare on the witness-stand
what he might or would have done had he had knowledge of
the facts as stated at the time he made the loan.    *Western
Union Tel. Co.* v. *Ferguson* (1901), 157 Ind. 64, 71, 72,
54 L. R. A. 846; *Jaqua* v. *Witham & Anderson Co.* (1886),
106 Ind. 545; *Davidson* v. *Associates, etc., Co.* (1877), 71
N. Y. 333; *Dillon* v. *Anderson* (1870), 43 N. Y. 231;
*Second Nat. Bank* v. *Averell* (1894), 2 App., D. C., 470,
25 L. R. A. 761.    Whether the evidence was harmless or not
we do not determine.

   Other questions are discussed by appellants' counsel in
respect to the refusing and giving of instructions, etc., but
such of these as may necessarily arise again on another
trial are in effect disposed of by what has been said upon
other questions hereinbefore reviewed.

   For the errors mentioned, the judgment is reversed, and
the cause remanded to the lower court, with instructions to
grant appellants a new trial, and sustain the demurrer to
the amended complaint.